Following the hearing before former Deputy Commissioner Shuping, the record was held open for the submission of medical evidence, as well as to allow defendant-employer to submit copies of plaintiff's canceled payroll checks to be used in determining the appropriate average weekly wage. At the time the record was closed, defendant-employer has not submitted any promised payroll records. On 9 January 1997 plaintiff's counsel submitted a package of medical records, which were received in evidence, subject to defendant-employer having a thirty day period in which to cross-examine any of the medical providers whose reports were received in evidence by deposition at its expense and/or to submit additional medical records and (subject to) the record being closed at the end of the same thirty-day period. This thirty-day period elapsed with defendant-employer having scheduled no depositions and having not submitted any additional medical records.
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Lawrence B. Shuping, Jr. Both parties waived oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 34 year old male with a ninth grade education. His prior work experience has involved working for eight years at the International House of Pancakes, where he began as a dishwasher and ultimately became the premises Assistant Manager, working for two years for MGM Transportation as a truck driver delivering furniture all over the United States and operating his own furniture delivery business, Reliable Furniture Delivery, delivering furniture in the High Point area.
2. Defendant-employer is a corporation engaged in the business of making furniture deliveries and at the time in question regularly employed three or more persons, plaintiff among them, and as a result was subject to and bound by the provisions of the North Carolina Workers' Compensation Act, but was neither a qualified self-insured nor had a policy of workers' compensation insurance in force and effect.
3. In approximately May of 1995 defendant-employer hired plaintiff as its warehouse manager. In the same capacity plaintiff earned an average weekly wage of $500 and his duties included responsibility for picking up furniture from local manufacturers in the High Point area and returning it to defendant-employer's warehouse, subsequently weighing and packing the same furniture for delivery and insuring that trucks were properly loaded not only requiring him to be on his feet as much as eight to ten hours a day, but to handle pieces of furniture ranging from one to more than four hundred pounds in weight, which he remains unable to do because of the right ankle, neck and low back injuries giving rise hereto.
4. With defendant-employer's knowledge and consent four or five days prior to 15 November 1995 two other warehouse employees put up a basketball goal in the warehouse in order to provide a place to play basketball during the lunch hour as they had been able to do at defendant-employer's old warehouse, which already had a basketball goal.
5. On 15 November 1995 Doug Humphries, defendant-employer's vice-president and plaintiff's immediate supervisor, asked plaintiff and one of the premises females employees to play basketball on the same goal during lunch time, which they proceeded to do and were interrupted on several occasions to allow Mr. Humphries to take necessary business calls.
6. While just he and Mr. Humphries were still playing basketball on the same day plaintiff struck one of the steel poles supporting the basketball goal and fell when he was pushed from behind not only twisting and injuring his right ankle, but also his neck and low back.
7. After initially being treated at Brigman Medical Emergency Clinic, plaintiff came under the care of Dr. Peter Whitfield of The Sports Medicine and Orthopedics Center, who has primarily treated his right ankle injury and not only continues to treat him to date, but has recommended possible arthroscopic surgery because of plaintiff's continued ankle problems and his failure to improve with conservative treatment.
8. Dr. Whitfield also initially attempted to treat plaintiff's neck and low back injuries; but subsequently referred him to Dr. Victoria Neave of The Johnson Neurological Clinic, who has since assumed responsibility for those injuries.
9. As a result of the involved neck injury plaintiff sustained a cervical disc herniation in his cervical spine ultimately requiring Dr. Neave to perform a two level spinal fusion, from which he has made a good post-operative recovery, but nonetheless retains a ten percent permanent partial disability of the back from the same neck injury.
10. Although Dr. Neave has attempted a conservative course of treatment for the low back injury he sustained on 15 November 1995, including as part thereof, multiple medications, restricted activity, physical therapy and epidural steroid injections; plaintiff continues to experience low back pain that has prevented him from returning to work and earning wages since 15 November 1995 other than the two days in December of that same year when he unsuccessfully attempted to return to work.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. At the time in question defendant-employer regularly employed three or more persons, plaintiff among them, and as a result thereof was subject to and bound by the provisions of the North Carolina Workers' Compensation Act, but was neither a qualified self-insured nor had a policy of Workers' Compensation insurance in force and effect. G.S. § 97-2(1)(2)(3).
2. On 15 November 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment when he slipped and fell playing basketball on the premises with his employer during lunch time resulting in the right ankle, low back and neck injuries giving rise hereto. G.S. § 97-2(6).
3. With the exception of the two days in December of 1995 when he unsuccessfully attempted to return to work, plaintiff has remained totally disabled by the same right ankle, low back and neck injuries since 15 November 1995 entitling him to compensation at a rate of $333.35 per week from 15 November 1995 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains disabled, subject to a change of condition, medical or employment.
4. As the result of his 15 November 1995 injury by accident, plaintiff is entitled to have defendant-employer pay for all reasonable medical expenses incurred by plaintiff, including as part thereof, not only the corrective neck surgery he underwent, but the continued treatment he requires for his incapacitating low back and right ankle injuries. G.S. § 97-25; G.S. §97-25.1.
* * * * * * * * * * * * * *
Based upon the foregoing, findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. With the exception of the two-day period in December of 1995 when he unsuccessfully attempted to return to work, defendant-employer Direct Delivery Services, Inc. shall pay plaintiff, on account of his continuing total disability, compensation at a rate of $333.35 per week from 15 November 1995 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. Such compensation as has accrued herein shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of his fee defendant-employer shall forward every fourth check payable herein directly to plaintiff's counsel.
3. Defendant-employer Direct Delivery Services, Inc. shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the right ankle, low back and neck injuries giving rise hereto, including as part thereof, not only the treatment that he has received to date for the same injuries at Brigman Medical Emergency Clinic, The Sports Medicine and Orthopedic Center and The Johnson Neurological Clinic, but the continued medical treatment he still requires for his incapacitating low back and right ankle injuries, when bills for the same are submitted in accordance with Industrial Commission's rules.
4. Defendant-employer Direct Delivery Services, Inc. shall pay the cost.
 S/ _______________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ GEORGE T. GLENN, III. DEPUTY COMMISSIONER
S/ __________________ MARGARET MORGAN DEPUTY COMMISSIONER